Our fourth case for this morning is Hurem v. Tavares. Mr. Habib. Good morning, Your Honor. Today is January 7th, 2015, and it's kind of ironic because four years ago at this very moment, on January 7th, 2011, Mr. Hurem had just been arrested for criminal trespassing, evicted from his apartment, and frankly was in a hospital at that point. Now, the question we have here is this, and I raise two questions. The first comes down to this. Do the police at this point have probable cause to arrest him for criminal trespassing? Now, let's start off on one basis. There is no issue at this point that on January 7th, and for some time before that, Dzevad Hurem was residing in his apartment. This is a third floor apartment. This is a multi-unit condo building. He had been living there according to his testimony and the evidence we produced for at least a month before that. But the police didn't know that, the people who showed up on the 7th of January and talked to Mrs. Quadri, do they? The police knew he was living there. That is the only item that counts. What do you mean? Because under Illinois law at this point... The question is whether he's a squatter, right? So let me ask you, is there anything to indicate what period of time he was authorized to be there? Yes. Was it indefinite? Eventually, I went back into state court and I got a temporary restraining order putting Mr. Dzevad Hurem back in the apartment because I was able to bring in the witnesses who helped him move in and who had communicated with the Quadris. This was on January 25th. You're not answering my question. My question is, is he arguing that he was going to be able to live there for the rest of his life or was there some kind of term? In other words, is there a lease here, obviously not in writing, or was he a squatter? He's not a squatter. He was a tenant under an oral month-to-month lease. Were the Quadris, had they authorized him to live there forever or for some definite period or what? They had authorized him to move in and once you move in... Answer my question, would you please? My question is not about whether he was authorized to move in. Was there a term for his living there or was he going to be able to live there for the rest of his life? Obviously, he was not going to be able to live there for the rest of his life. Well, what was the term? It would be a month-to-month lease. And what's the evidence of that? Did he say that? His own testimony. Did he testify to that? Excuse me. Month-to-month? His own testimony and frankly at this point... He testified that this was month-to-month and they could terminate him with some notice. Is that what he testified to? They would have to follow the Forcible Entry and Detainer Act, yes. I'm not talking about the Forcible Detainer Act. I'm asking whether there was an agreement with the Quadris about his term in the apartment. The agreement was he could move in and it's assumed that once he moves in... What's this assumed business? That's the law at this point under Illinois Tenant Law. Once you move in at this point and you're a resident, if there's nothing at this point as far as a written lease, then at this point you're a tenant on a month-to-month lease. That's the law of the state of Illinois in terms of landlord-tenants. If once I move into an apartment, if I make a deal and if I move into my apartment at this point and I am living there at this point, I don't have a formal lease. I have an agreement I'm supposed to pay rent or whatever. The landlord obviously can terminate the lease if he gives me 30 days notice. He can terminate the lease if he wants to use the five-day notice claiming I didn't pay. Don't shout at me, would you? Was there an agreement as to how much rent he was paying? Yes. What was that? The agreement was $700 a month as set forth in my statement of facts. That's oral, right? Oral. So there's an oral agreement and this whole case arises because Mrs. Quadri tries to get the police to throw him out in the middle of a month as opposed to going through the process of giving 30 days notice and getting rid of him that way. The whole case arises because Mrs. Quadri disobeys the Laws of the Landry Entertainer Act, which requires at this point that if you're going to evict somebody, you have to follow these procedures and the case furthermore arises because the police at this point proceed in support of Mrs. Quadri to tell him to get out of the apartment, turn over the keys, and when he does not do that, they arrest him for criminal trespassing. I didn't think, therefore, that this would be against Mrs. Quadri. I did. We sued Mrs. Quadri. We first brought the action in state court. I got a temporary restraining order when we filed the civil rights case at this point. The problem with suing the police is that the claim seems to depend on the assertion that to violate the Illinois forcible entry and detainer statute is to violate the federal constitution. And you have problems there not only with Gordon against Degelman, which you have asked us to overrule, but also with the Supreme Court's decision in Virginia against Moore, which agreed with Gordon against Degelman, and which your brief doesn't discuss, and we lack the authority to overrule. Virginia versus Moore at this point, we had a defendant that was or a plaintiff, whatever he was at this point, that was actually guilty. He was guilty of driving on a suspended license. So, therefore, right off the bat, they had probable cause. But two, Virginia versus Moore also did not... The holding of Virginia against Moore is that it does not violate the Fourth Amendment of the Constitution to violate a state law. That's the basic holding of Gordon against Degelman. Your brief argues the opposite. How could we hold that a violation of state law violates the U.S. Constitution after Virginia against Moore? Because if the state law protects at this point a person's home, and if the core of the Fourth Amendment is the protection of someone's home at this point, then we should look at it in a much different light between a motorist stopped while he is driving at this point and someone who is living in his home at this point and is being evicted at this point in violation of the Forcible Entry and Detainer Act. But the problem is you're assuming a congruence. Now, sometimes there is some congruence between a violation of state law and a violation of the federal Constitution. But the point the Supreme Court is making is that it's not necessary and sufficient to say that state law has been violated, ergo the federal Constitution has been violated. You need more. You need to look at the standards of the Fourth Amendment itself. Basically, you ignore state law and ask whether if there were no state law, this particular behavior would still violate the Fourth Amendment. Certainly do it that way. And here we have this woman who calls the police officers. Imagine another scenario. Imagine Mr. Smith is somebody who just wanders in off the street and plunks down in an apartment that the Quadris own, and she's trying to rent it. She doesn't want some homeless guy from the street living there. So she calls the police, and the police come and she explains what's happened, and they say, Mr. Smith, you've got to come with us. You can't stay here anymore. Surely there's probable cause for them to take that step, to arrest my hypothetical Mr. Smith. And so if you'll agree with that, then the question is why is our situation significantly different as a matter of law? Because unlike your example with Mr. Smith, Mr. Uram had been living in the apartment. He had his furniture in the apartment. He had keys to the apartment. They don't know that that's legitimate or not. Maybe he was just lucky. You have given us more background, but I'm trying to put myself in the position of the police who show up after the 911 call, who don't know all of the facts that you're talking about. Then at this point, would the police know that they're dealing with someone's home, and there is no issue, but that Uram was living in the home? If the police know that someone is living in their home at this point, then obviously at this point, he is not a trespasser. If he is living in the home, that's ridiculous. What if you go home today, and there's someone sleeping in your bed, and you say, hey, who are you? He says, well, it's my home. I've moved in. I'm enjoying it. Can't you call the police to remove that person? Except in this case, this wasn't the Quattri's home. This was investment property that the Quattri's owned at this point. But they own it, right? They own it, so now you own a condo, and you're thinking of renting it out, or maybe you just stay there every so often, and you go in, and there's a person you discover who's moved in. The thing is, you're assuming that the police can look at the fact that he's been occupying that apartment unit, and you're going further than the police's knowledge goes. If they have probable cause to leave him, you did just what you should do. You went it through state law. There's the TRO telling the Quattri's he's got to be able to go back. I guess they eventually remove him anyway, but that's a different matter. But I don't see where the police have done anything wrong to act on the basis of the information they've been given. Because under this example, and I just really want the court to think about this, what your opinion since then, basically it's telling landlords, and it's telling the police of the city of Chicago, or the police of the state of Illinois, that at this point, a landlord thinks I might get lucky. I can call the police, and I can tell, I want this guy out, I don't know who he is, I'm the owner at this point. And if the tenant cannot produce, in a few minutes, evidence at this point that he is actually living there, then the landlord can say, I just got lucky, I threw the guy out without even having to go through the Forced Malendry and Detainer Act. And that is what your decision, when you state at this point, that the Fourth Amendment, the Illinois Forced Malendry Act... The conclusion that the Fourth Amendment doesn't prevent the police from doing something does not say that the police acted properly. It just says that if they acted improperly, they were violating state law. And the remedy is in state court, under state law, against the remedy. It doesn't follow from any of that that there has to be a federal remedy for all wrongs. The U.S. Constitution is not a source of extra remedies for violation of state law. Didn't the United States Supreme Court, in the Soledad versus Cook County case, hold that if the police participate in a wrongful eviction at this point, then they too can be held liable? Wasn't this court reversed on that issue? Frankly, at this point, I'm looking at things almost from a real-world point of view. I'm dealing with a situation where I've got a landlord who figures at this point I could disregard the law, and if you recall from the briefs, the police had been there two days earlier and told the landlord, go get us a lawyer and go through that. The Quadris, they don't concede that they rented their apartment to this guy? Actually, on the 5th, they did concede. The evidence before the court, and this was in Sgt. Willoughby's deposition, was that on January 5th, when he went there, at the demand of the Quadris at this point, when Buyerum told him he had paid rent to this Morshim Quadri, Morshim admitted it, and that's why Sgt. Willoughby left. Two days later, the Quadris get lucky, they call it up another group of cops, who at this point just take the position, if you cannot produce documentary proof that you're living there at this point, then get out. Now, if somebody is to come, and I just point out, I don't know how many people in the city of Chicago and elsewhere are living on oral leases. I don't know how many people in the city of Chicago are just living with an oral lease. And I don't know how many people in the city of Chicago, when they pay the rent, pay it in cash, the idea that the landlords at this point can do this and just call the police and use the police as the actor to at this point remove a tenant, and great, the tenant can go back to court, he can win, but in the meantime he's been arrested, in this case he lost his possessions while this was taking place, he actually spent several weeks in the hospital. You have a decision, which basically at this point, in my opinion, for what it's worth, obviously, does not recognize that the Fourth Amendment protects the sanctity of the home. Nothing in Gordon v. Daigleman or in the district court's opinion really just covered this issue. You're just treating a criminal trespass and an arrest of somebody in their home and removal of their home as somebody simply being arrested on the street or somebody driving a car. Frankly, at this point, I think it's a dangerous precedent as what occurred in this case and what can occur in other cases at this point, where the landlord can say, maybe I'll get lucky, and the police at this point, either through ignorance or through some collusion with the landlord, which I'm not saying occurred here, can take advantage and just put somebody out in the street. And I would point out, this occurred in January. How are owners, there is a problem of squatters, and how is an owner supposed to deal with a squatter? Well, number one, if the squatter at this point has the keys to the apartment and he's moved in his furniture at this point on a third floor building, then whoever comes there should ask him pretty relevant questions. If you're saying you don't know this person, which was the same questions my judge asked in the state court. You're not responding to my question. What rights does an owner have with respect to if he's moved his furniture and so on, then he's not a squatter? But now what if he hasn't provided any of these indicia of leasehold status? Frankly, under Illinois law, and this occurs on a regular basis, landlords file a forcible entry and detainer suit and they name unknown occupants. They're not even sure sometimes who lives there. And this is occurring constantly with banks foreclosing on homes where they don't know who's actually living in the home. But under the law, the bank cannot walk in and take possession. The bank cannot call the police and take possession. The bank is required to file a lawsuit against unknown occupants. But that's ridiculous. It's the law of the state of Illinois though. So my wife and I have a vacation house in Michigan. We haven't been there for months. Suppose we go out there and there's a person living there. We don't know who the person is. We have no correspondence with the person. You're saying we have to bring a lawsuit to remove this person? Obviously it depends upon the facts. Depends on what? It depends upon the facts. Right, exactly. That's not the facts in this case. But you seem not to be willing to recognize facts which do entitle a landlord to call the police to remove a squatter, right? There are facts that do authorize that, surely, otherwise be preposterous, right? I would agree, except for that's not the situation in the instant case. All right, well, we'll take a look at this. Thank you very much, Mr. Habib. Thank you, Your Honor. Yes, Mr. Collins. Mr. Collins, what's to prevent the police from just rampaging around Chicago, throwing people out of apartments and ignoring the forcible entry and detainer law, which does have carefully drawn out procedures for these kinds of disputes? It does, Your Honor, but for the purposes of an arrest for criminal trespass, which is the type of arrest that took place here, the officers should rely on the facts as they're presented to them. So what's the difference? When do you use criminal trespass and when do you have to use forcible entry and detainer for a holdover tenant? Aren't they a trespasser once they've held over? I believe so. I apologize, I'm not an expert in Illinois landlord-tenant law. But for the purposes of the Fourth Amendment claim that's at issue in this case, if there was probable cause to arrest Mr. Hiram, then the Fourth Amendment claim fails, even accepting for the sake of argument that there might have been a violation of state law, the Forcible Entry and Detainer Act. And that's precisely what happened in Gordon v. Dagelman. The state attempted a prosecution of Mr. Gordon, but the prosecution was dismissed because of a violation of the Forcible Entry and Detainer Act. But that did not allow or support Gordon's Fourth Amendment claim against the police. And that's what we have here. The police, based on the facts that were presented to them, had probable cause to believe that Mr. Hiram was not authorized to be in the apartment where he was found by the police. So are you saying that there actually is no constraint that operates on either the police or anyone else from, in a sense, having an election of remedies? You think there's a holdover tenant or the person under this oral agreement isn't paying as much as the landlord wishes he were being paid, which seems to be part of the problem here, $700 versus $1,100 or some numbers like that. So they can just say, well, let's not fuss with forcible entry and detainer. Let's just call the Chicago police and have the guy tossed out immediately. If there is a constraint, it exists under state law. But I'm asking you what it is because you're saying, well, maybe, but you're not being very specific. It sounds like there isn't one. We do know that in this case, after the arrest took place, Mr. Hiram went to state court and obtained a temporary restraining order under the Forcible Entry and Detainer Act. After his heart attack, right? Correct. That allowed him access to the apartment. So it's not as if Mr. Hiram was without a remedy in this case. But as to whether Mr. Hiram has a remedy against the police for their involvement. Does the Forcible Entry and Detainer Act provide damages for a violation? I believe the only remedy under the act is possession of the apartment, Your Honor. But, again, I apologize, I'm not an expert in that statute. But for the purposes of the Fourth Amendment, because there was probable cause supporting the arrest, the police are not liable for that arrest. So what about this little scrap of paper with Mr. Quadri's phone number on it and the fact that he had the keys and his personal possessions were there in the apartment? There were a fair number of indicia that suggested that he was not there surreptitiously as a squatter, but that he, in fact, was there legitimately. Well, of course, having a person's phone number does not indicate that you're authorized. No, that's why I gave all three circumstances. I didn't mention just the phone number. The phone number is a piece of it. And then, of course, when Mr. Quadri had been called two days earlier, he had said, yeah, sure, I took some money from Hurom, but it wasn't enough. So it was just a dispute over the amount of rent, not whether there was a lease. That was with the officers who responded in January. That was with Willoughby, actually. Right. So then, on the 7th, Quadri denies getting the money, and Hurom doesn't have any proof of payment. But there still are the other indicia, the key and the personal furniture and so on in the apartment. And there are further indicia that cut the other way, Your Honor, and that is the absence of a lease, the absence of any utility bills or any mail in Mr. Hurom's name. Well, he only just moved in. I don't think he was claiming that he lived there forever. It sounded like sort of an oral sublet, actually. It wasn't a friend of his who had had the apartment before him? I believe, according to Mr. Hurom, he had moved in after his friend had moved out. Right, yeah. But all that was unknown to the police as they were confronted with this situation. And in the absence of any kind of evidence supporting, such as a lease or utility bills or even a witness who could support Mr. Hurom's claims, the police were entitled to come to the conclusion. Was the issue of the keys explored? Of course, you can make it. You can have a key made. Do we know whether the Quadrige gave him the key? Your Honor, this is— And there was this predecessor in the apartment, and he must have had a key. Presumably, correct. But with respect to whether Mr. Hurom had any keys, the only evidence in the record, even remotely relevant to this point, is Mr. Hurom's testimony at his deposition that one of the arresting officers told him to turn over the keys. But there's no evidence in the record that shows that Mr. Hurom actually possessed the keys. That's a fair inference, though. I mean, there's no reason not to assume he has the keys. I understood that he'd gotten them from the predecessor tenant who was his friend. So he takes over the lease, gets the keys, moves his stuff in, and then all of a sudden the Quadriges decide they're not getting enough money from him, so they decide to kick him out. But instead of using forcible entry and detainer, they just call the police on him. Well, is there anything about whether this predecessor was authorized to sublet the apartment? Well, Your Honor, Mrs. Quadriges purchased the apartment approximately two months before the arrest took place out of foreclosure. And the previous occupant of the apartment, I'm not sure who was the landlord in that. Nail Memick, it says, or at least this is Mr. Hurom's brief, from August 2009 forward, he paid rent to Nasreen Syed Quadri in the amount of $700 per month. Nasreen's Mrs. Quadriges. He moves out in November 2010. Hurom helps him, and he gives Hurom the keys, and they, I don't know who they agree with. But anyway, Memick has an affidavit in this case. Your Honor, that's actually an unsworn statement. It's not a sworn affidavit. But also it's undisputed that Mrs. Quadriges didn't actually purchase the apartment until October of 2010. So the time frame in that statement is off. Maybe Memick lives there for a month or so before she owns it. It's possible. So when she bought it, this person, the predecessor of Hurom, is living there? Apparently, according to Mr. Hurom. He has a key, obviously. And he passes the key on. Something like that. We don't know. That's just not in the record, Your Honor. But the officers, when confronted with what they saw, they didn't know anything about the predecessor tenant. All they saw was that it appeared likely that Mr. Hurom was not authorized to be in this apartment, and for that reason they had probable cause supporting the arrest. There was also a due process argument made in Mr. Hurom's brief. Unless the court has any questions with respect to that issue, we'll rest on our brief. For these reasons, the district court's judgment should be affirmed. Thank you. All right. Thank you, Mr. Collins. Your time expired, Mr. Habib, so we will take this case under advisement.